[No. B150524. Second Dist., Div. Four. Sept. 18, 2003.]

THE PEOPLE ex rel. ALLSTATE INSURANCE COMPANY, Plaintiff and Respondent, v.
HISHAM MUHYELDIN et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, the following portions of this opinion are certified for publication: Introduction; Factual and Procedural Background; Discussion; part A. Standing; part C. Burden of Proof; and Disposition.

COUNSEL

W. Kenneth Teebken; Law Offices of Joseph La Torre and Joseph La Torre for Defendants and Appellants.

Manning & Marder, Kass, Ellrod, Ramirez, Dennis B. Kass, David J. Wilson and Julie M. Fleming for Plaintiff and Respondent.

OPINION

**VOGEL (C. S.), P. J.—**

## INTRODUCTION

This action arises out of an insurer's lawsuit against three physicians and their medical clinics. The insurer alleged the defendants had committed widespread fraud by submitting hundreds of false claims to it. After a lengthy jury trial, a jury found in the insurer's favor, resulting in an award of slightly more than $7 million. The court awarded costs and attorney fees to the insurer under the appropriate statutory provision. A judgment was entered and this appeal followed. We find no merit to any of the appellate contentions and therefore affirm the judgment. In addition, we direct the trial court to determine and award to the insurer a reasonable amount of appellate attorney fees and costs.

## FACTUAL AND PROCEDURAL BACKGROUND

Penal Code section 550 (section 550) criminalizes the act of knowingly presenting to an insurance company a false claim for benefits. Insurance Code section 1871.7, subdivision (b) (section 1871.7) creates civil liability for violating section 550. It provides: "Every person who violates any provision of . . . Section . . . 550 . . . of the Penal Code shall be subject, in addition to any other penalties that may be prescribed by law, to a civil penalty of not less than five thousand dollars ($5,000) nor more than ten thousand dollars ($10,000), plus an assessment of not more than three times the amount of each claim for compensation . . . . The penalty prescribed in this paragraph shall be assessed for each fraudulent claim presented to an insurance company by a defendant and not for each violation."

Allstate Insurance Company (Allstate) sued Drs. Hisham Muhyeldin, Feras Haddad, and Elyas Khury and various health clinics owned by the three physicians (collectively defendants). It claimed defendants had violated section 550 and therefore were liable under section 1871.7 for civil penalties and assessments.

Allstate presented two specific theories of fraud to the jury. The first theory was that defendants presented false claims by intentionally and knowingly using improper billing codes—Current Procedural Technology (CPT) Codes—to inflate their bills. CPT codes were jointly developed by the American Medical Association and the Health Care Financing Administration and are the standardized nomenclature for use in insurance claims. By using a false CPT code to describe an examination, defendants represented that a particular exam was more comprehensive than that actually performed. The second theory was that defendants knowingly billed for services that were never performed. Allstate paid a significant amount of money on all of these claims.

Pursuant to the parties' stipulation, evidence was presented to the jury on 40 claims that were a representative cross-section of the 318 false claims upon which Allstate sued. The claims ranged from $325 to $5,470. The samples were based upon factors such as the patient's age, the amount of the bill, the CPT code(s) used, the individual defendant who signed the medical report, and the clinic from which the bill originated. Defendant Muhyeldin was involved in all 40 claims; defendant Khury was involved in 13 of the 40 claims; and defendant Haddad was involved in nine of the 40 claims. The parties further agreed the jury's findings on the 40 claims would "be applied on a *pro rata* basis to the remaining underlying claims. This shall apply to all damage and penalties allowed pursuant to *Insurance Code* § 1871.7."

Trial lasted almost six weeks. Allstate's witnesses included doctors who had worked with defendants, the patients for whom the false claims were submitted, and various experts. In addition, Allstate called defendants as adverse witnesses, relied upon some expert testimony, and introduced many documentary exhibits. The defense presented three brief witnesses. As explained in closing argument, the defense theory was that defendants did perform the services represented on the claim forms sent to Allstate.

The jury deliberated two weeks. The jury found by a special verdict, with two exceptions, defendants had "knowingly upcod[ed] the . . . 40 claims" and had "knowingly bill[ed] for services not rendered" on the 40 claims.[1] Based upon the mandate of section 1871.7, the jury assigned a penalty for each claim for the individual defendant of either $7,500 or $10,000. As determined by the jury, the total penalties for the three defendant doctors are: $400,000 against defendant Muhyeldin ($10,000 on each of the 40 claims); $70,000

---

[1] The jury found defendant Khury was not liable for upcoding one of the medical bills and was not liable on one of the claims for which a bill was submitted for services never rendered.

against defendant Haddad ($7,500 each on 8 claims and $10,000 on the ninth claim); and $90,000 against defendant Khury ($7,500 each on 12 claims). The jury also imposed the maximum assessment for each claim: a sum equal to three times the amount of the fraudulent bill.

Applying the parties' stipulation to project the jury's verdict on the 40 claims over the entire 318 false claims upon which Allstate had sued resulted in an award of $7,028,080. The court awarded Allstate $656,900 in attorney fees and $183,035 in costs, resulting in a judgment in excess of $8 million.

## DISCUSSION

### A.  STANDING

Defendants first contend Allstate lacked standing to bring this action. Defendants interpret section 1871.7 to require Allstate to show defendants employed cappers to procure clients in order for Allstate to be able to sue them.[2] The contention lacks merit because it is based upon an incorrect construction of the operative statutory provisions.

Section 1871.7, subdivision (e)(1) provides: "Any interested persons, including an insurer, may bring a civil action *for a violation of this section* for the person and for the State of California. The action shall be brought in the name of the state." (Italics added.) This provision creates a qui tam action: "An action brought under a statute that allows a private person [e.g., Allstate] to sue for a penalty, part of which the government or some specified public institution will receive." (Black's Law Dict. (7th ed. 1999) p. 1262.) Consequently, Allstate's complaint alleged: "This is an action to recover damages and civil penalties on behalf of the People of the State of California ex rel. Allstate Insurance Company . . . ."[3]

Notwithstanding the clear statutory language authorizing this action, defendants urge that "Section 1871.7(e) . . . permits civil qui tam suits against doctors that use cappers to procure clients and patients. There exists no proof in the record that [defendants] employed cappers. . . . Without proof that

---

[2] Defendants first raised this contention in the trial court in their unsuccessful motion for a judgment notwithstanding the verdict. By minute order, the trial court denied the motion without a statement of reasons.

[3] The action was prosecuted solely by Allstate because the Attorney General, district attorney, and insurance commissioner chose not to intervene. (See § 1871.7, subd. (e)(2).)

cappers were employed, the Court lacked jurisdiction to enter a judgment against [defendants]."[4] Defendants rely upon subdivision (a) of section 1871.7 which provides, in relevant part: "It is unlawful to knowingly employ runners, cappers, steerers, or other persons to procure clients or patients . . . to perform or obtain services or benefits . . . under a contract of insurance." However, defendants overlook subdivision (b) of section 1871.7. As set forth above, subdivision (b) creates liability for a civil penalty and assessment based upon the presentation of a fraudulent claim when such presentation violates section 550.[5] ▇ Consequently, it is apparent subdivision (e) which authorizes "bring[ing] a civil action for . . . violation *of this section*" authorizes an action based upon the theory a defendant violated either subdivision (a) or subdivision (b). (Italics added.) In other words, the Legislature intended to give private parties the right to sue based upon *any* act stated in subdivisions (a) and (b) that could subject a defendant to civil penalties and damages. It therefore is legally irrelevant Allstate did not proceed upon a "capping" theory.

In a similar vein, defendants contend that since section 550 is found in the Penal Code, "only the government can prosecute under [this] Section[]" so that "[t]o allow a private party [e.g., Allstate] to proceed against [defendants] and obtain a judgment is error and deprived [them] of their constitutional rights of due process and protection [*sic*]" under the federal Constitution. This claim is patently meritless for the reasons explained in the previous paragraph.

## B.   RETROACTIVE APPLICATION OF SECTION 1871.7*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## C.   BURDEN OF PROOF

Defendants contend: "It was error for the Court to instruct the jury that the burden of proof was by the preponderance of the evidence. . . . [T]he burden

---

[4] In their reply brief, defendants cast this contention as a failure of proof and a failure to instruct on all required elements of the prima facie case. Regardless of how characterized, the contention lacks merit for the reasons we explain.

[5] Section 1871.7, subdivision (b) also creates civil liability for conduct that violates other Penal Code sections criminalizing other forms of insurance fraud.

* See footnote, *ante*, page 604.

of proof under Section 1871.7 is by clear and convincing evidence." (Fn. omitted.) The contention lacks merit.

Defendants argue as follows:[8] The California Legislature modeled The Insurance Frauds Prevention Act (Ins. Code, § 1871 et seq.) after the federal False Claims Act (31 U.S.C. § 3729 et seq.). Federal courts initially held the burden of proof in those actions was clear and convincing evidence. (See, e.g., *U.S. v. Ekelman & Associates, Inc.* (6th Cir. 1976) 532 F.2d 545, 548, and *U.S. v. Ueber* (6th Cir. 1962) 299 F.2d 310, 314–315.) However, in 1986 Congress overruled that line of cases by adding subdivision (c) to title 31 United States Code section 3731 to provide that the burden of proof was by the preponderance of the evidence. Defendants then place great significance on the fact that when the California Legislature enacted our state law in 1989, it did not include any provision similar to 31 United States Code section 3731(c) stating the burden of proof was preponderance of the evidence. From this defendants—without citation to *any* legislative history—divine that this omission "is [a] compelling inference that the standard of proof under 1871.7 should be clear and convincing evidence."

This argument overlooks Evidence Code section 115, which states: "Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence."

As explained by Witkin, "[e]ven where the theory of the [civil] case involves the accusation of a crime, the burden of proving the crime . . . is met by a preponderance of the evidence; i.e., the high degree of proof demanded in criminal cases is not required in civil cases even on the issue of a crime. [Citations.]" (1 Witkin, Cal. Evidence (4th ed. 2000) Burden of Proof and Presumptions, § 36, p. 185.) In fact, in *Liodas v. Sahadi* (1977) 19 Cal.3d

---

[8] Allstate's brief asserts: "Defendants waived this argument by acquiescing in the [trial] court's ruling that the proper burden of proof for this matter is preponderance of the evidence." Although defendants' reply brief does not directly answer this point, the record shows defendants, in fact, did object in the trial court to the use of the instruction. For instance, defendants' motion for a new trial stated: "The Court erroneously instructed the jury, *over Defendants' trial counsel's objection*, that the Plaintiff had the burden of proof by preponderance of the evidence." (Italics added.) And at the hearing on the new trial motion, the court stated: "That [the issue of burden of proof] was argued at great length by counsel in chambers. And I think there is a record made of that argument. And the court came to the conclusion that the argument you [defense counsel] are making is erroneous. . . . [¶] . . . [¶] We went over this at great length and I think there are cases supporting the fact it is by a preponderance of the evidence, not clear and convincing. And we spent a lot of time on that point, and I arrived at an opinion on that matter that under California law as it now stands under that statute, it is preponderance of the evidence test not clear and convincing." The issue has therefore been preserved for appellate review.

278, 291 [137 Cal.Rptr. 635, 562 P.2d 316], the California Supreme Court disapproved earlier cases that had stated in civil cases fraud was to be proved by clear and convincing evidence and held instead that the proper standard of proof is by a preponderance of the evidence.

Defendants also argue that because "Punitive Damages and Penalties are being extrapolated" the burden should be proof by clear and convincing evidence. We disagree. Defendants' analogy to punitive damages is flawed. Subdivision (c) of section 1871.7 explicitly provides: "The penalties set forth in subdivision (b) are intended to be remedial rather than punitive . . . ." In any event, the Legislature is certainly aware of its ability to impose a higher standard of proof on recovery of damages if it so chooses. For example, in 1987 the Legislature amended the Civil Code to require that in order to recover punitive damages, the plaintiff must prove "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." (Civ. Code, § 3294, subd. (a).) This amendment was passed two years before the Legislature enacted "The Insurance Frauds Prevention Act." ■ Clearly, if the Legislature had wished to impose this higher evidentiary standard on an action to recover damages under section 1871.7, it would have so stated. It did not. " '[I]t still remains true, as it always has, that there can be no intent in a statute not expressed in its words, and there can be no intent upon the part of the framers of such a statute which does not find expression in their words.' [Citations.] . . . 'Words may not be inserted in a statute under the guise of interpretation.' [Citation.]" (*City of Sacramento v. Public Employees' Retirement System* (1994) 22 Cal.App.4th 786, 793–794 [27 Cal.Rptr.2d 545], fn. ommitted.) Consequently, the principle embodied in Evidence Code section 115—that the applicable burden is by a preponderance of the evidence—applies.

In sum, the trial court properly instructed on and the jury correctly applied the preponderance of the evidence standard.

### D.– I.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 604.

## DISPOSITION

The judgment is affirmed. Allstate will recover reasonable costs and attorney fees on appeal, the amount of which will be determined by the trial court.

Epstein, J., and Curry, J., concurred.

Appellants' petition for review by the Supreme Court was denied January 14, 2004. Chin, J., did not participate therein.